916 F.2d 245
 56 Fair Empl.Prac.Cas. 152,
55 Empl. Prac. Dec. P 40,342
Michelle Y. TOLBERT, Plaintiff-Appellant,
v.
UNITED STATES of America and Preston R. Tisch, in his
capacity as Postmaster General of the United
States Postal Service, Defendants-Appellees.
 No. 90-2136
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 1, 1990.
 Gregg M. Rosenberg, Gregg M. Rosenberg & Associates, Houston, Tex., for plaintiff-appellant.
 Robert P. Sindermann, Jr., Office of Labor Law, U.S. Postal Service, Washington, D.C., Henry K. Oncken, U.S. Atty. and Robert Darden, Asst. U.S. Atty., Houston, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Texas.
 Before JOHNSON, HIGGINBOTHAM, and BARKSDALE, Circuit Judges.
 PER CURIAM:
 
 
 1
 Michelle Tolbert appeals the dismissal of her Title VII action against her former employer, the Postmaster General of the United States. The district court properly dismissed Tolbert's claim for failure to exhaust her administrative remedies, and its judgment is affirmed.
 
 I. FACTS AND PROCEDURAL HISTORY
 
 2
 The facts material to this appeal are not disputed. Tolbert was an employee of the United States Postal Service from 1979 until she resigned in November 1981. In 1986 Tolbert applied for re-employment; her application was denied in November 1986. In December 1986 she contacted an officer of the Equal Employment Opportunity office of the Postal Service, and in February 1987, over five years after she had resigned from the Postal Service, Tolbert filed a complaint with that office. Her complaint alleged that she had suffered sexual harrassment while employed by the Postal Service, that the harrassment was the cause of her resignation, and that the supervisor who had harrassed her had also caused her application for re-employment to be denied. On February 28, 1987 the Postal Service rejected her complaint.
 
 
 3
 On March 20, 1987 Tolbert filed a timely appeal of the Postal Service's decision with the Office of Review and Appeals of the Equal Employment Opportunity Commission. Ten days later, on March 30, 1987, before Tolbert received the decision of the EEOC office, and before she had waited 180 days for a decision, Tolbert filed a complaint in federal district court, naming the United States and the Postmaster General as defendants. Her complaint alleged various causes of action, including claims under Title VII, tort claims (invoking the Federal Tort Claims Act), and various deprivations of her constitutional rights.
 
 
 4
 On June 8, 1987, the defendants filed a motion for summary judgment. Among other things, they argued that Tolbert had neither exhausted her administrative remedies nor complied with the filing deadlines prescribed by law for pursuing a Title VII action. One week later, on June 15, 1987, before the defendants' motion for summary judgment could be heard, the EEOC Office of Review and Appeals issued its decision, affirming the decision of the Postal Service.
 
 
 5
 The district court referred the summary judgment motion to a magistrate, who recommended that the summary judgment be granted in favor of the defendants as to Tolbert's constitutional claims, her claims under the Federal Tort Claims Act, and all of her Title VII claims growing out of the alleged harrassment in 1981. The magistrate also recommended, however, that summary judgment be denied as to Tolbert's remaining Title VII claims, all of which deal with the denial of re-employment in 1986. Tolbert, the magistrate concluded, should be allowed to pursue those claims.
 
 
 6
 The defendants objected to this last recommendation. Tolbert did not object to any of the magistrate's recommendations. The district court adopted the recommendations of the magistrate as to the constitutional claims and the FTCA claims, and as to the Title VII claim that related to events in 1981. As to the Title VII claims that related to events in 1986, the district court rejected the magistrate's recommendation to allow the claim to go forward: the court held that Tolbert could not pursue that claim because she had failed to file it at the proper time, and because she had not exhausted her administrative remedies. Tolbert filed a timely notice of appeal.
 
 II. DISCUSSION
 
 7
 Tolbert appeals the district court's grant of summary judgment only as to her claims arising under Title VII. She did not object to the magistrate's recommendation that all of her other claims be dismissed; she has apparently abandoned those claims altogether. As to her Title VII claims, two different standards of review apply. This Court reviews only for plain error the district court's grant of summary judgment against the claim growing out of events in 1981. Tolbert did not object to the magistrate's recommendation that that claim be dismissed; she cannot now attack it. Nettles v. Wainwright, 677 F.2d 404, 410 (5th Cir. Unit B 1982) (en banc). Because the district court did not err in that dismissal, its judgment is affirmed.
 
 
 8
 As to Tolbert's Title VII claims arising out of events in 1986, the standard of review is more searching. Because the district court did not accept the magistrate's findings on this issue, it is subject to review de novo, as is any grant of summary judgment entered in the first instance by a district court. See USX Corp. v. Tanenbaum, 868 F.2d 1455, 1457 (5th Cir.1989). Since the facts here are undisputed, the question is simply whether the district court had jurisdiction of Tolbert's claim. It did not. There are two requirements for filing a Title VII action in federal court: 1) the complaint must be filed within the time allotted by Title VII, and 2) the complainant must first have exhausted her administrative remedies. Failure to comply with either of these requirements wholly deprives the district court of jurisdiction over the case; it is the well-settled law of this circuit that each requirement is a prerequisite to federal subject matter jurisdiction. See, e.g., Brown v. Dept. of Army, 854 F.2d 77, 78 (5th Cir.1988) ("The thirty-day filing limitation for federal employees is a jurisdictional requirement"); Porter v. Adams, 639 F.2d 273, 276 (5th Cir.1981) ("The exhaustion requirement ... is an absolute prerequisite to suit" under Sec. 2000e-16).
 
 
 9
 As to the time limitation for filing, Tolbert argues that the cases in this Circuit hold only that it is filing too late, and not too early, which deprives the court of jurisdiction. While this is not a promising argument--it seems obvious that anyone who files too early, has, by definition, filed before she has exhausted her administrative remedies--it need not be pursued here. It is clear that at the time Tolbert filed her action she had not exhausted her administrative remedies; thus, the court had no jurisdiction over the action, and was required to dismiss it.
 
 
 10
 After the Postal Service denied her claim, Tolbert had a choice as to how to proceed. She could have immediately filed an action in the federal district court. See 29 C.F.R. Sec. 1613.281 (authorizing a civil action after either the initial agency action, or after review of the initial agency action by the EEOC Office of Review and Appeals). Tolbert chose instead to pursue a further administrative remedy, and appealed to the EEOC Office of Review and Appeals. See 29 C.F.R. Sec. 1613.231 (right to appeal initial agency action to EEOC). The question is whether, having chosen to pursue administrative review of the Postal Service's decision, Tolbert must exhaust that remedy, or whether she can abandon it in mid-course, and pursue a civil action instead.
 
 
 11
 This Court has recently held, as to an action brought under the Age Discrimination in Employment Act, that a complainant who chooses to pursue EEOC review of an initial agency determination must exhaust that avenue of relief before bringing a civil action, White v. Frank, 895 F.2d 243, 244 (5th Cir.1990), and the rule announced in White for ADEA actions applies equal force to Title VII actions.
 
 
 12
 Initially, it is worth noting that other circuits have held that the same rule of exhaustion applies to Title VII actions. See, e.g., Rivera v. United States Postal Service, 830 F.2d 1037, 1039 (9th Cir.1987), cert. denied, 486 U.S. 1009, 108 S.Ct. 1737, 100 L.Ed.2d 200 (1988) ("[O]nce a party appeals to a statutory agency, board or commission, the appeal must be 'exhausted.' ... Impatience with the agency does not justify immediate resort to the courts."); Jordan v. United States, 522 F.2d 1128, 1132 (8th Cir.1975). More importantly, though, the decision in White makes clear that because Tolbert had not exhausted her administrative remedies, the federal district court had no jurisdiction over her Title VII action.
 
 
 13
 In deciding White this Court relied on and adopted the opinion of the district court. 895 F.2d at 243. Tolbert argues that the district court opinion distinguishes between ADEA actions and Title VII actions, and that it held that the exhaustion requirement that applies to ADEA actions does not apply to Title VII actions. The district court opinion does contain some seemingly contradictory language as to whether a Title VII complainant who pursues an appeal to the EEOC must exhaust that appeal before filing suit. See White v. Frank, 718 F.Supp. 592, 595, 597 (W.D.Tex.1989). Nonetheless, a careful reading of White makes clear that there is no contradiction: the rule is the same for actions under the ADEA and Title VII; plaintiffs in Title VII actions who seek EEOC review of the decision of whatever initial agency denied their claim must complete the course of review by the EEOC before filing a civil action.
 
 
 14
 The district court opinion in White plainly holds that a complainant who chooses to pursue an appeal to the EEOC must exhaust that appeal before filing suit. The court notes that the Title VII regulations "include a strict exhaustion rule," and that
 
 
 15
 [a]mong these regulations is the rule that if a plaintiff proceeds to an appeal before the EEOC Office of Review and Appeals, he may not file suit until 180 days after the appeal is filed. 29 C.F.R. Sec. 1613.281(d).
 
 
 16
 718 F.Supp. at 597.
 
 
 17
 The only problematic language occurs elsewhere in the opinion, when, in discussing the exhaustion requirements facing ADEA plaintiffs, the district court remarks "[u]nlike the Title VII process ... an ADEA Plaintiff may not choose to abandon his administrative claims once he starts down that track." Id. at 595. Taken out of context, this language suggests that a Title VII plaintiff could choose to abandon her appeal to the EEOC at any time, and file a civil action.
 
 
 18
 Such a reading would be incorrect. Taken in context, it is clear that the district court is referring to the provision in the Title VII regulations which allows a plaintiff to choose, after the initial decision from the agency which employs the plaintiff, whether to pursue an administrative appeal to the EEOC, or to proceed directly to the courthouse. See 29 C.F.R. Sec. 1613.281. That is the only point at which a Title VII plaintiff can "abandon" the administrative "track." The ADEA plaintiff, on the other hand, has a different choice: he can choose at the outset to bypass administrative remedies altogether, and go directly to the courthouse; if he chooses to pursue an administrative remedy, however, he must see it through to the end. White, 718 F.Supp. at 595.
 
 
 19
 White, then, plainly stands for the proposition that a Title VII plaintiff who appeals to the EEOC Office of Review and Appeals must await a decision by that office, or 180 days, whichever comes first, before filing in the federal court.[1] Tolbert did not await a decision by the EEOC office; she filed her complaint in the district court only 10 days after filing an appeal with the EEOC. She did not exhaust her administrative remedies, and the district court had no jurisdiction over her action.
 
 
 20
 The only remaining question is whether the defect in Tolbert's action was cured when the EEOC issued its decision before Tolbert's claim was dismissed by the district court. In such a case, the rule must be that the defect was not cured. To hold otherwise would allow a plaintiff to file an action and begin civil proceedings--discovery, motions to dismiss and for summary judgment, and so on--before completing the course of administrative review. A plaintiff could thereby largely circumvent the rule that she must exhaust her administrative remedies. To allow a plaintiff to proceed in such a fashion would, in short sequence, produce all of the evils that are designed to be avoided by requiring exhaustion of administrative remedies.
 
 
 21
 This is, admittedly, a strict construction of the Title VII exhaustion requirement. Such a strict construction, however, is necessary if the aims of the exhaustion requirement are to be served. Moreover, this construction does not impose any great additional burden on Title VII plaintiffs or their counsel. The rule is simple: file in the time allotted, and neither before nor after. Certainly a decision which prohibits Title VII plaintiffs from filing their complaints too early creates no greater burden than does the well-settled prohibition against filing too late. Although we may have misjudged the profession, we suspect that most lawyers will not have much trouble complying with a rule which forbids them to file too promptly.
 
 III. CONCLUSION
 
 22
 For the reasons stated, the district court properly granted summary judgment against Tolbert on her Title VII claims. Accordingly, the judgment is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 Even if it were not clear whether the rule announced in White for exhaustion of administrative remedies in ADEA cases also applied to Title VII cases, there would be strong reasons to extend the rule to cover Title VII. The same reasons that counsel against allowing complainants to abandon their ADEA administrative actions also counsel against allowing abandonment of Title VII appeals to the EEOC
 In this regard, the reasoning of the Third Circuit in Purtill v. Harris, 658 F.2d 134 (3d Cir.1981), cert. denied, 462 U.S. 1131, 103 S.Ct. 3110, 77 L.Ed.2d 1365 (1983), is persuasive. Although it was speaking in particular about abandonment of an ADEA administrative action, that court's concerns are equally applicable to a Title VII plaintiff's appeal to the EEOC.
 Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings. Moreover, such a course would unnecessarily burden courts with cases that otherwise might be terminated successfully by mediation and conciliation. Absent an indication of contrary congressional intent, we will not countenance circumventing the administrative process in this manner.
 658 F.2d at 138.